■ CHERRY HILL HOMES, INC., Respondent, v. JOHN BARBIERE et al., Constituting the Board of Zoning Appeals of the INCORPORATED VILLAGE OF SEA CLIFF, Appellants, and NORMAN PARSONS et al., Intervenors-Respondents.— Judgment of the Supreme Court, Nassau County, entered February 14, 1969, affirmed, on the opinion at Special Term, without costs. Christ, Brennan, Rabin and Kleinfeld, JJ., concur; Beldock, P. J., dissents and votes to reverse the judgment, dismiss the proceeding and confirm the determination of the appellant Board of Zoning Appeals, with the following memorandum: This proceeding was brought by petitioner to review a determination of the appellant Board of Zoning Appeals which had denied petitioner's application for a variance. The appeal is from a judgment which annulled said determination and directed the issuance of the variance requested by petitioner for the erection of a one-family house on the subject property. The essential facts are undisputed and may be briefly summarized. In January, 1927, the initial zoning ordinance was enacted, whereunder one-family dwellings could be erected on plots 4,000 square feet in area and 40 feet in width in a "Residence B" zone. These area and width requirements prevailed until December, 1948, when the ordinance was amended to increase the width of lot requirement from 40 to 75 feet and lot area requirement from 4,000 square feet to 7,500 square feet. During this latter period, petitioner's predecessor in interest acquired a parcel of land which had a street frontage of 242.40 feet and an irregular depth of up to 234.55 feet, with a total of over 51,000 square feet. In May, 1960, the foregoing area and width requirements of the ordinance were further amended to increase the width of lot requirement from 75 to 100 feet and the lot area requirement from 7,500 square feet to 10,000 square feet. In 1964 and 1965 the owner of the afore-mentioned parcel of land conveyed to petitioner certain portions thereof, which together conformed to the 100-foot frontage requirement of the zoning ordinance (the owner's retained portion had a frontage of 142.40 feet). Petitioner subse-

quently improved this plot with a one-family dwelling and sold it to the intervenors. Thereafter, in December 1965, the owner conveyed to petitioner the easterly portion of her remaining property, which portion had a frontage of 42.40 feet, being less than one-half of the minimum frontage required by the ordinance. In 1966, petitioner applied for a permit to construct a dwelling on this latter parcel of land. Prior thereto, petitioner had constructed a house for its predecessor in interest on the westerly portion of the original parcel, which portion had a frontage of 100 feet. The application was rejected on the ground that the width of the parcel did not meet the minimum frontage requirement. Thereafter, petitioner applied for a variance on the ground of practical difficulty and unnecessary hardship. The Board of Zoning Appeals denied the variance application on the grounds that petitioner would suffer no economic injury by application of the ordinance; that the public health, safety and welfare would be adversely affected if the requested variance were granted; and that the situation in which petitioner found itself was self-created by reason of the manner in which the property was subdivided. In *Matter of Fulling* v. *Palumbo* (21 N Y 2d 30) the Court of Appeals enunciated the rule that where a property owner can show " significant economic injury " (p. 33) by the application of a minimum-area ordinance, the ordinance will be upheld only upon a showing that the public health, safety and welfare will be served by preserving the restriction and denying the variance. The major thrust and significance of the *Fulling* decision rests in the holding that, upon proof of significant economic injury by the landowner, the burden of going forward shifts to the municipality, which must then offer proof that the area restriction is a reasonable and proper exercise of the police power. At bar, even assuming that petitioner has shown " significant economic injury ", it is my opinion that the evidence presented to the board amply demonstrated that a legitimate public interest will be served by the denial of the variance. The board found that, due to the peculiar slope of petitioner's property and the resultant drainage therefrom, its elevation above street level and adjoining properties, the denuding of natural foliage which would be necessary in order to construct a house on the subject property, and the interference with the privacy of adjoining property owners due to the location of the proposed house on the property, the public health, safety and welfare could best be served by denying the application. Moreover, it is significant that here, unlike the situation in *Fulling*, the substandard condition was not created by rezoning subsequent to acquisition (cf. *Matter of Weinstein* v. *Planning Bd. of Vil. of Great Neck*, 28 A D 2d 862, affd. 21 N Y 2d 1001). In sum, I do not believe that it can properly be said that the Board's determination was arbitrary or capricious.